### THE LAKE WILSON.

(District Court, S. D. New York. February 8, 1922.)

Shipping ☞120—Ship held liable for damage to cargo from sweating and salt water.

A ship *held* liable for damage to cargo from sweating on the ground that it was due to poor ventilation, inadequate dunnage, and absence of cargo battens to prevent the cargo from touching the skin of the ship, and from salt water on the ground that it was caused from leaking manholes and the use of nonwaterproof hatch covers.

In Admiralty. Libel by Gerald L. Hoyt and others, doing business as Maitland, Coppell & Co., against the Steamship Lake Wilson, the Panama Railroad Company, claimant, heard with six other libels, all

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

involving claims for damage to cargo aboard said steamship. Decrees for libelants.

Decrees affirmed 300 Fed. 810.

Carter, Ledyard & Milburn, of New York City, for libelants Tattersfield Co. and Maitland, Coppell & Co. [Hoyt].

Richard Reid Rogers, of New York City, for claimant respondent Panama R. Co.

Harrington, Bigham & Englar, of New York City, for libelants G. Amsinck & Co., G. Amsinck & Co., Inc., Mauger & Avery, Pablo Calvet & Co., and Crimmins & Peirce Co.

MACK, Circuit Judge. These seven libels were tried at the same time. They all involve claims for damage to cargo sustained on a voyage of the steamship Lake Wilson from Colon to New York, in December, 1918. It is admitted that the cargo was damaged, but it is alleged that the damage was due to causes excepted in the bills of lading.

There has been considerable conflict in the testimony; but after reviewing the record in connection with Mr. Rogers' brief for the ship, I am confirmed in the opinion that I formed when I heard the evidence, that judgment must be rendered in favor of the libelants. The testimony of the libelants tended to show that the damage was caused both by sweat and salt water. The sweat was alleged to have been due to poor ventilation, inadequate dunnage, the absence of cargo battens, and the nonuse of mats. The salt water damage was alleged to have been due to the use of nonwaterproof hatch coverings.

It was contended on behalf of the ship that virtually all the damage was due to sweat, and that the sweat was caused by conditions for which the ship was not responsible. I am convinced, however, that in so far as the damage was due to sweat, the ship is responsible. The ship's own surveyor's testimony was to the effect that the sweating was caused by the lack of ventilation, because the six Sampson posts with mushroom tops did not serve the purpose of ordinary cowls or hoods. The evidence of the libelants' surveyors was to like effect. Whatever value might be attached to the fact that the Lake Wilson had been classed by Lloyds as 100 A-1, which is said to cover the installation of an adequate system of ventilation to the holds of the ship, it would seem that the evidence before me is fairly clear that the ventilation was inadequate. The damage was, moreover, doubtless aggravated by the failure of the ship to keep the cargo from touching the skin of the ship. It is admitted that cargo battens were not used, and the dunnage that was used instead was not, in my opinion, adequate or sufficient for the purpose. It is unnecessary to rely on the further fact that mats were not employed to protect the cargo from sweat, as some of the ship's witnesses testified that mats were not customarily employed for that purpose.

As to the damage, if any, due to salt water. It appears from the evidence of the ship's surveyor that there were two leaking manholes which were the cause of the damage to the cargo stowed in their way. He was unable to state, moreover, that these may not have been leak-

ing on a prior voyage. The captain testified that protective measures were taken as soon as the leaks were discovered and that only six or eight bags at most were damaged. But the question for me to determine is the responsibility for, and not the extent of, the damage. And without going into the question upon whom the ultimate burden of proof of want of due diligence in making the vessel seaworthy may lie under the form of bill of lading employed in these cases, I feel justified in placing responsibility upon the ship, inasmuch as no evidence was even brought forward in behalf of it to explain the leaking of the manholes, the position being taken that virtually all the damage that occurred could be ascribed to sweat.

The libelants' surveyor, moreover, testified that the salt water damage might be attributed to the use of hatch coverings which were not waterproof. Although the evidence is somewhat conflicting as to whether the hatch covers used over the hatches were caulked, I have concluded that they were not on the libelants' surveyor's testimony, inasmuch as the captain could only state that he directed that they be caulked and could not state of his own knowledge that they had been.

A decree must consequently be entered in favor of the libelants, who may prove the damage sustained by their cargoes either from sweat or salt water.